**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LUIS VICTOR, individually and on behalf of all others similarly situated,**<br><br>            **Plaintiff,**<br>    -against-<br><br>**FOOT LOCKER RETAIL, INC.,**<br><br>            **Defendant.** | **No.:**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Luis Victor ("Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself, and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.      This lawsuit seeks to recover underpayment caused by unpaid overtime, untimely wage payments, unpaid scheduling premiums and other damages for Plaintiff and similarly situated non-exempt hourly positions including but not limited to sales associates, stock associates, sales leads, security guards, assistant managers, and similarly situated hourly positions (collectively, "Hourly Workers") who work or have worked for Foot Locker Retail, Inc. ("Foot Locker" or "Defendant").

2.      Headquartered in New York, New York, Foot Locker sells retail footwear and other consumer goods throughout the United States.

3.      Foot Locker operates over 2,500 stores and employees over 40,000 people, the majority of whom are Hourly Workers.

4.      At all relevant times Defendant has compensated Plaintiff and all other Hourly workers on an hourly basis.

5.      At all relevant times, Defendant has also paid Plaintiff and all other Hourly Workers non-discretionary bonuses, including, but not limited to, store sales bonuses. *See* **Exhibit A**, Victor Paystubs.

6.      At all relevant times, Defendant paid Plaintiff and all other Hourly Workers an overtime rate that failed to properly calculate their bonuses, as required by law.

7.      Until December 14, 2023, Defendant illegally compensated Plaintiff and all other Hourly Workers in New York on a bi-weekly basis.

8.      Despite being manual workers, Defendant failed to properly pay Plaintiff and all other Hourly Workers in New York their wages within seven calendar days after the end of the week in which these wages were earned.

9.      In this regard, Defendant failed to provide timely wages to Plaintiff and all other similarly situated Hourly Workers in New York.

10.      Manual Workers as contemplated by NYLL § 191 are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955)

11.      As such, the failure to provide wages owed to Plaintiff and all other similarly situated Manual Workers, according to NYLL § 191 constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019).

12.    Defendant failed to provide Plaintiff and similarly situated Hourly Workers with an accurate statement of wages pursuant to NYLL § 195(3), as the paystubs provided failed to notate Plaintiff's and similarly situated Hourly Workers correct overtime rate.

13.    Plaintiff relied on his paystubs to ensure that Defendant paid him the correct rate for his hours worked.

14.    Defendant provided Plaintiff with inaccurate wage statements. In this regard, Defendant's wage statements failed to provide Plaintiff's correct overtime rate.

15.    Due to Defendant's failure to provide the correct overtime rate on the on the wage statements provided to Plaintiff and similarly situated Hourly Workers in New York, Plaintiff and similarly situated Hourly Workers were misinformed about the overtime rate they were entitled to receive.

16.    Defendant's incorrect wage statements allowed Defendant to continue their unlawful wage and hour scheme without Plaintiff's or similarly situated Hourly Workers' awareness that they were being underpaid. Accordingly, Plaintiff and similarly situated Hourly Workers in New York are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide them with accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(3).

17.    New York City passed the Fair Workweek Law to require retail employers to provide their employees with predictable schedules with advance notice.

18.    Foot Locker has violated the Fair Workweek Law by failing to provide Plaintiff and similarly situated Hourly Workers in New York with predictable schedules given with at least 72 hours' notice, cancelling and/or shortening employees' shifts with less than 72 hours' notice, requiring an employee to work additional time with less than 72 hours' notice without written

consent. *See* N.Y.C. Admin. Code §§ 20-1251, 20-1252.

19.    Due to the failure to provide predictable schedules Plaintiff and similarly situated Hourly Workers were denied the free and predictable use of their time.

20.    Due to the failure to provide predictable schedules Plaintiff and similarly situated Hourly Workers had to cancel events, miss appointments, arrange childcare, and/or miss out on economic opportunities which they had previously scheduled.

21.    Plaintiff brings this action on behalf of himself and all other similarly situated Hourly Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law, Article 6, §§ 190 *et seq.* ("NYLL").

## THE PARTIES

**Plaintiff**

**Luis Victor**

22.    Luis Victor ("Victor") is an adult individual who is a resident of New York, New York.

23.    Victor has been employed by Foot Locker as an Hourly Worker since approximately October 2021.

24.    Victor is a covered employee within the meaning of the FLSA and the NYLL.

25.    A written consent for Victor is being filed with this Class Action Complaint.

**Defendant**

**Foot Locker Retail, Inc.**

26.    Foot Locker Retail, Inc. is a domestic business corporation organized and existing under the laws of New York.

27.    Foot Locker Retail, Inc.'s principal executive office is located at 330 West 34th

Street, New York, New York.

28.     Foot Locker Retail, Inc. was and is a covered employer within the meaning of the NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

29.     Foot Locker Retail, Inc. has maintained control, oversight, and direction over Plaintiff and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

30.     Foot Locker Retail, Inc. applies the same employment policies, practices, and procedures to all Hourly Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

31.     Foot Locker Retail, Inc. has answered lawsuits, including lawsuits filed in the Southern District of New York by stating that Foot Locker Retail, Inc., not Foot Locker, Inc. employed Plaintiffs "at all relevant times." *See* **Exhibit B,** Foot Locker Retail, Inc. Answer Documents.

32.      Foot Locker Retail, Inc. has answered lawsuits, including lawsuits filed in the Southern District of New York by stating that Foot Locker Retail, Inc. "is the entity that operates Foot Locker's retail stores." *See* **Exhibit B.**

33.     Foot Locker Retail, Inc. did not have authorization from the New York Department of Labor to pay employees on a biweekly basis until December 14, 2023. *See* **Exhibit C**, NY Department of Labor List of Employers Authorized to Pay Employees on a Biweekly Basis.

34.     Upon information and belief, at all relevant times, Foot Locker Retail, Inc. has had an annual gross volume of sales in excess of $500,000.

35.     At all times relevant, Foot Locker Retail, Inc. has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in

interstate commerce.

36.     In this regard, employees for Foot Locker Retail, Inc. regularly handled goods in interstate commerce, including, but not limited to, footwear, clothing, sports equipment , and other supplies produced outside the State of New York.

## JURISDICTION AND VENUE

37.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

38.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

39.     This Court also has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff and the members of the proposed class are citizens of states different from that of Defendant.

40.     There are over 100 members in the proposed class.

41.     Defendant is subject to personal jurisdiction in New York.

42.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

43.  Plaintiff brings the First Cause of Action, an FLSA claim, on behalf of himself and all similarly situated persons who work or have worked as Hourly Workers for Foot Locker who elect to opt-in to this action (the "FLSA Collective").

44. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the FLSA Collective for their overtime hours worked.

45. Consistent with Defendant's policies and patterns or practices, Plaintiff and the FLSA Collective were not paid the proper premium overtime compensation of 1.5 times their regular rates of pay, including earned non-discretionary bonuses, for all hours worked beyond 40 per workweek.

46. All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiff and the FLSA Collective have performed.

47. As part of their regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, the correct overtime wages for all hours worked in excess of 40 hours per workweek.

48. An employer "willfully violates the FLSA when it either new or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *See Young v. Cooper Cameron Corp.*, 586 F. 3d 201, 207 (2d Cir. 2009).

49. According to *Whiteside v Hover-Davis*, "a claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *See* 995 F.3d 315, 323 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "For a plaintiff to nudge their claim 'across the line from conceivable to plausible,' [they] must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof

of those facts is improbable.'" *See Id.* (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1995)).

50.    Defendant knew or should have known that their wage and hour practices with regards to Hourly Workers violated the FLSA's overtime requirements. In this regard, district courts around the country, including district courts throughout New York, have repeatedly ruled that non-discretionary bonuses must be factored into a worker's overtime rate.

51.    Defendant's willful violation of the FLSA is further evidenced by their operation of a business large enough to employ over 40,000 Hourly Employees and run over 2,500 locations.

52.    To support their large-scale operations, Defendant either employs or contracts multiple attorneys with the specific job duty of ensuring compliance with federal and state labor laws, or Defendant recklessly disregards these laws.

53.    Accordingly, it is clear that Defendant recklessly disregarded the law, because their substantial operation size does not allow for mere ignorance of their flagrant violation of the FLSA.

54.    As such, Defendant's failure to pay overtime constitutes a willful violation of the FLSA.

## **NEW YORK CLASS ACTION ALLEGATIONS**

55.    Plaintiff brings the Second and Third Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Hourly Workers for Foot Locker in New York between May 9, 2018[1] and the date of final judgment in this matter (the "New York Overtime

---

[1]  This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

Class").

56.     The members of the New York Overtime Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

57.     There are more than fifty members of the New York Overtime Class.

58.     Plaintiff's claims are typical of those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions.

59.     Plaintiff and the New York Overtime Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected everyone in the New York Overtime Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each member of the New York Overtime Class.

60.     Plaintiff is able to fairly and adequately protect the interests of the New York Overtime Class and has no interests antagonistic to the New York Class.

61.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

62.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender.

63.     Common questions of law and fact exist as to the New York Overtime Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Overtime Class individually and include, but are not limited to, the following:

   (a)     Whether Defendant correctly compensated Plaintiff and the New York Class for hours worked in excess of 40 per workweek;

   (b)     whether Defendant failed to furnish Plaintiff and the New York Class with accurate statements with every payment of wages, as required by the NYLL.

64.     Plaintiff brings the Fourth Cause of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

   All persons who work or have worked as Hourly Workers for Foot Locker in New York between May 9, 2018[2] and December 14, 2023 (the "New York Untimely Pay Class").

65.     The members of the New York Untimely Pay Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

66.     There are more than fifty members of the New York Untimely Pay Class.

67.     Plaintiff's claims are typical of those claims that could be alleged by any member of the New York Untimely Pay Class, and the relief sought is typical of the relief which would be sought by each member of the New York Untimely Pay Class in separate actions.

68.     Plaintiff and the New York Untimely Pay Class have all been injured in that they

---

[2]  This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

have been uncompensated, under-compensated, or untimely compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected everyone in the New York Untimely Pay Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each member of the New York Untimely Pay Class.

69.     Plaintiff is able to fairly and adequately protect the interests of the New York Untimely Pay Class and has no interests antagonistic to the New York Untimely Pay Class.

70.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

71.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

72.     Common questions of law and fact exist as to the New York Untimely Pay Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Untimely Pay Class individually and include, but are not limited to, the following:

    (a)     whether Defendant correctly compensated Plaintiff and the
            New York Class on a timely basis;

## NEW YORK CITY CLASS ACTION ALLEGATIONS

73.     Plaintiff brings the Fifth, Sixth, and Seventh Causes of Action, Fair Workweek claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class

of persons consisting of:

> All persons who work or have worked as Hourly
> Workers for Foot Locker Retail, Inc. in New York City
> between May 9, 2022[3] and the date of final judgment in
> this matter (the "New York City Class").

74.     The members of the New York City Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

75.     There are more than fifty members of the New York City Class.

76.     Plaintiff's claims are typical of those claims that could be alleged by any member of the New York City Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions.

77.     Plaintiff and the New York City Class have all been injured due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected everyone in the New York City Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each member of the New York City Class.

78.     Plaintiff is able to fairly and adequately protect the interests of the New York City Class and has no interests antagonistic to the New York City Class.

79.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

80.     A class action is superior to other available methods for the fair and efficient

---

[3] This class period is due to Governor Cuomo's Executive Order that tolled the applicable statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

81.    Common questions of law and fact exist as to the New York City Class that predominate over any questions only affecting Plaintiff and/or each member of the New York City Class individually and include, but are not limited to, the following:

> (b) whether Defendant failed to provide each employee with advance notice of schedule, pursuant to N.Y.C. Admin. Code § 20-1252;

> (c) whether Defendant cancelled or reduced the hours of Retail Worker's shifts in violation of N.Y.C. Admin. Code § 20-1251;

> (d) whether Defendant obtained written consent to work additional time outside of their schedule, pursuant to N.Y.C. Admin. Code § 20-1251.

## PLAINTIFF'S FACTUAL ALLEGATIONS

82.    Consistent with their policies and patterns or practices as described herein, Defendant harmed Plaintiff, individually, as follows:

**Luis Victor**

83.    Victor has been employed at Foot Locker's retail store located at 146 Dykman Street, New York, New York as an hourly employee since approximately October 2021.

84.    During his employment, Victor frequently worked over 40 hours per week. In weeks where Victor worked over 40 hours per week and bonuses, Defendant failed to calculate the overtime rate including non-discretionary bonuses given for overall store sales performance.

85.    For example, for the pay period of December 4, 2022 to December 17, 2022, Victor

worked 89 hours and 42 minutes and was paid $18.00 per hour for plus an additional a non-discretionary bonus of $217.63. Accordingly, Victor's regular rate was $20.42 for this pay period. *See* **Exhibit A**.

86.    Victor worked 9 hours and 42 minutes of overtime during the pay period of December 4, 2022 to December 17, 2022, and was accordingly owed an overtime premium of $297.47. However, Defendant only paid him $262.17, or in other words, he was underpaid by $35.30. *See* **Exhibit A**.

87.    In addition, for the pay period of January 15, 2023 to January 28, 2023, Victor worked 90 hours and 30 minutes and was paid $18.00 per hour plus an additional a non-discretionary bonus of $437.50. Accordingly, Victor's regular rate was $22.83 for this pay period. *See* **Exhibit A**.

88.    Victor worked 10 hours and 30 minutes of overtime during the pay period of December 4, 2022 to December 17, 2022, and was accordingly owed an overtime premium of $359.97 However, Defendant only paid him $283.77, or in other words, he was underpaid by $76.20. *See* **Exhibit A**.

89.    Defendant similarly provided all other Hourly Workers non-discretionary bonuses for overall store sales performance, and failed to calculate these payments into Victor's and Hourly Workers overtimes rates.

90.    During Victor's employment, over twenty-five percent of Victor's duties were physical tasks, including but not limited to: (1) stocking shelves, (2) receiving shipments, sweeping, (3) mopping, (4) taking out garbage, and (5) standing for long periods of time

91.    Despite regularly spending more than twenty-five percent of his shift performing these physical tasks, Victor has been compensated by Defendant on a bi-weekly basis.

92.     As a result of Defendant's untimely wage payments, Victor was underpaid for the first seven days of each bi-weekly pay period, and thus Defendant paid Victor on an untimely basis until December 14, 2023.

93.     For example, for the period beginning on January 15, 2023 to January 28, 2023, Victor was paid his lawfully earned wages on February 3, 2023. *See* **Exhibit A**.

94.     In this regard, Defendant failed to pay Victor his wages earned from January 15, 2023 to January 21, 2023 by January 28, 2023 as required by NYLL § 191(1)(a).

95.     As a result of Defendant's untimely wage payments, Victor was underpaid for the period of January 15, 2023 to January 21, 2023, and for every corresponding period where Defendant paid Victor on an untimely basis.

96.     Moreover, Plaintiff was denied the time-value of his money by Defendant's underpayments. Plaintiff was unable to invest, save, or purchase utilizing the wages he earned and was owed by January 28, 2023, respectively, and all other similarly underpaid workweeks.

97.     Plaintiff was similarly underpaid for every workweek that he was paid his lawfully earned wages after more than seven days within the time he completed his work.

98.     Defendant's unlawful biweekly pay scheme was applied to all Hourly Workers in New York until December 14, 2023

99.     Throughout his employment, Defendant failed to provide Victor with accurate wage statements with each payment of wages as required by the NYLL, because the wage statements provide to Plaintiff by Defendant failed to notate Plaintiff's lawful overtime rate.  *See* **Exhibit A**.

100.     Defendant's failure to provide Plaintiff with accurate wage statements misinformed Plaintiff about the correct overtime rate he was entitled to receive. This allowed to Defendant to continue their unlawful pay scheme.

101.    Defendant proffered inaccurate pay statements to Victor and all Hourly Workers for the weeks in which they were underpaid.

102.    Defendant regularly failed to post at the workplace <u>and</u> provide Victor with a written work schedule at least 72 hours before the first day of each schedule in violation of N.Y.C. Admin. Code § 20-1252. In fact, the schedule was given forty-eight hours before the first scheduled day of work on a consistent basis.

103.    During Victor's employment, Foot Locker regularly cancelled and/or shortened Victor's schedule by more than 15 minutes with less than 72 hours' notice in violation of N.Y.C. Admin. Code § 20-1251.

104.    For example, Defendant notified Victor that his scheduled shifts the days of January 20, 2023 and January 21, 2023 were to be shortened by multiple hours on January 19, 2023, in violation of N.Y.C. Admin. Code § 20-1251.

105.    Furthermore, Defendant notified Victor that his scheduled shift the day of October 16, 2024 was to be shortened by multiple hours on October 15, 2024, in violation of N.Y.C. Admin. Code § 20-1251.

106.    Defendant also required Victor to work additional time with less than 72 hours' notice and without obtaining written consent in advance, in violation of N.Y.C. Admin. Code § 20-1251.

<u>**FIRST CAUSE OF ACTION**</u>
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

107.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

108.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and

the supporting federal regulations, apply to Defendant and protect Plaintiff and the members of FLSA Collective.

109.    Plaintiff and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

110.    Defendant failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay, including bonuses, for all hours worked in excess of 40 per workweek.

111.    As a result of Defendant's willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied proper overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**<u>SECOND CAUSE OF ACTION</u>**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the New York Overtime Class)**

112.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

113.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant and protect Plaintiff and the New York Class.

114.    Defendant failed to pay Plaintiff and the New York Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate of pay, including bonuses – for all hours worked beyond 40 per workweek.

115.    Due to Defendant's violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant their unpaid overtime wages, liquidated damages as provided

for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the New York Overtime Class)**

116. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

117. Defendant failed to supply Plaintiff and the New York Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, bonuses, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked per week, including overtime hours worked if applicable; deductions; and net wages.

118. Due to Defendant's violations of NYLL § 195(3), Plaintiff and the New York Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Timely Wages**
**(Brought on behalf of Plaintiff and the New York Untimely Pay Class)**

119. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

120. The timely payment of wages provisions NYLL § 191 and its supporting

regulations apply to Defendant and protect Plaintiff and the New York Class.

121.    Defendant failed to pay Plaintiff and the New York Class on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiff and the New York Class being underpaid.

122.    Due to Defendant's violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

**FIFTH CAUSE OF ACTION**
**Fair Workweek Law**
**Advance Notice of Work Schedules**
**(Brought on behalf of Plaintiff and the New York City Class)**

123.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

124.    Defendant is required to provide employees with written notice of their work schedules at least 72 hours before the first day of each schedule. N.Y.C. Admin. Code § 20-1252.

125.    Defendant is also required to maintain records of each written schedule provided to each employee. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. § 7-609(a)(1)(iii). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

126.    Defendant committed a violation of Section 20-1252 of the Fair Workweek Law each week it failed to provide each employee with that employee's written work schedule 72 hours in advance.

127.    Due to Defendant's violations of the Fair Workweek Law, Plaintiff and the New York Class have been deprived of a predictable work schedule and are entitled to recover from

Defendant compensatory damages and any other relief required to make the employee whole, and reasonable attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**Fair Workweek Law**
**Shift Shortenings and/or Cancellations**
**(Brought on behalf of Plaintiff and the New York City Class)**

128.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

129.    With limited exception, Defendant could not cancel or reduce the hours in an employee's shift by more than 15 minutes less than 72 hours before the start of the shift. N.Y.C. Admin. Code § 20-1251.

130.    Defendant committed a violation of Section 20-1251 of the Fair Workweek Law each week it cancelled or reduced an employee's shift by more than 15 minutes less than 72 hours in advance.

131.    Due to Defendant's violations of the Fair Workweek Law, Plaintiff and the New York Class have been deprived of a predictable work schedule and are entitled to recover from Defendant compensatory damages and any other relief required to make the employee whole, and reasonable attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**Fair Workweek Law**
**Additional Work Time**
**(Brought on behalf of Plaintiff and the New York City Class)**

132.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

133.    Defendant could not require Hourly Workers to work additional time within 72 hours before the start of a shift, without obtaining written consent in advance of the additional

20

time.

134.    Defendant committed a violation of Section 20-1251 of the Fair Workweek Law each time it required an employee to work additional time with less than 72 hours' notice and failed to obtain written consent in advance.

135.    Due to Defendant's violations of the Fair Workweek Law, Plaintiff and the New York Class have been deprived of a predictable work schedule and are entitled to recover from Defendant compensatory damages and any other relief required to make the employee whole, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all Hourly Workers in the United States who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Foot Locker.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     Designation of Plaintiff as representative of the New York Rule Classes and counsel of record as Class Counsel;

E.     Unpaid overtime wages and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.     Liquidated damages permitted by law pursuant to the NYLL;

G.     Statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide Plaintiff and similarly situated Hourly Workers with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article § 198;

H.     Compensatory damages and any other relief required to make Hourly Workers whole;

I.     Prejudgment and post-judgment interest;

J.     Reasonable attorneys' fees and costs of the action; and

K.     Such other relief as this Court shall deem just and proper.

Dated: New York, New York
       December 23, 2024

Respectfully submitted,

 */s/ Brian S. Schaffer*
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and
the Putative Class*

## FAIR LABOR STANDARDS ACT CONSENT

1.      I consent to be a party plaintiff in the lawsuit against Foot Locker, related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs.  I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.



Luis (Oct 30, 2024 17:44 EDT)

Signature

# Luis Alexandre Victor Jr

Full Legal Name (Print)